GRACE F. HYATT, C. F. HYATT, JR., AND MENDELL JACK-
SON HYATT, BY GRACE F. HYATT, THEIR NEXT FRIEND,
*Plaintiffs in Error,* v. INTER-SOUTHERN LIFE INSURANCE
COMPANY, A CORPORATION, *Defendant in Error.*

### Opinion Filed March 12, 1921.

"INTER-SOUTHERN LIFE INSURANCE COMPANY does now
and hereby assume the within policy of Insurance Numbered
3756 on the life of Clinton Lee Hyatt, of Kissimmee, Florida,
dated on the 21st day of January, 1910, and is now hereby
bound by all of the terms and conditions thereof as fully and
to the same extent as said Florida Life Insurance Company
is bound by reason of said policy for the full period of five
years from and after the 29th day of September, 1915, at
midnight and *after five years,* as above, *to carry said policy
with a lien or loan upon it for the sum of* $266.54, as pro-
vided in said agreement." *Construed* to mean that the lien
upon the policy did not attach until the expiration of five
years from the 29th of September, 1915.

A Writ of Error to the Circuit Court for Osceola Coun-
ty; C. O. Andrews, Judge.

Judgment reversed.

*John T. G. Crawford,* for Plaintiffs in Error;

*Robinson & Bridges,* for Defendant in Error.

BROWNE, C. J.—There is involved in this case the con-
struction of certain clauses of a reinsurance contract be-
tween J. C. Luning, Treasurer of the State of Florida,
acting for the Florida Life Insurance Company, and the
Inter-Southern Life Insurance Company of Louisville,
Ky., and a similar clause in an agreement between Clin-

ton Lee Hyatt, consenting to his reinsurance by the Inter-Southern Life Insurance Company under the terms and conditions of the agreement between the Inter-Southern Life Insurance Company and J. C. Luning as Treasurer of the State of Florida.

Clinton Lee Hyatt obtained from the Florida Life Insurance Company a policy on his life for $2,000.00, dated January 21, 1910, the annual premium on which was $67.90. He paid the premiums up to and including the one due on January 21, 1915. The policy contained an automatically non-forfeitable provision that, "if after three years from the issue of this policy any premium herein shall not be paid when due, the same shall be charged against the policy as a loan at five per cent. if the loan value be sufficient to provide for it after deducting existing loans and accrued interest. If after deducting same, the balance is not sufficient to cover one annual premium, a premium for a shorter period, but not less than a quarterly premium shall be charged."

The policy contained a table showing its cash and loan values at various periods of its life.

When the premium became due on January 21, 1916, Hyatt borrowed from the Inter-Southern Company $67.90 to pay it, and gave his note for that amount. When the premium became due in 1917, he paid the interest on the first note and again borrowed $67.90 from the Inter-Southern to pay it and gave his note for $135.80, and took up the first note. The note was a "Premium Lien Note" and contained a recital that it was to be a lien on the policy which should be deducted from any cash settlements made under it, and further provided that if the note was "not paid on or before maturity it will automatically be extended to the next succeeding anniver-

sary date of policy, provided the policy is in force to that date."

The company made these loans and accepted these notes under the automatically non-forfeitable clause of the policy.

The policy had been in existence more than three years and was, therefore, non-forfeitable for non-payment of premiums so long as there was a sufficient loan value against which the premium could be charged. On the 21st day of January, 1918, the policy had been in existence eight years and had a cash value of $342.00.

It is conceded that if the Florida Life Insurance Company had continued in business the policy would have been in full force at the time of Hyatt's death on the 17th day of October, 1918, as it had a cash value in excess of the amount necessary to keep it alive under the automatically non-forfeitable clause. The Inter-Southern Life Insurance Company, however, questions its liability because of certain clauses in the contracts between the Inter-Southern Life Insurance Company and J. C. Luning as State Treasurer, and the agreement between Clinton Lee Hyatt, the policy holder, and the Inter-Southern Life Insurance Company. The agreement between the Inter-Southern Life Insurance Company and the State Treasurer contained a clause that the Inter-Southern would issue to each policy holder who should file with the Florida Life Insurance Company his written assent to the reinsurance agreement, an agreement "whereby it shall engage to be bound by all the terms and conditions of his policy, to the same extent as Florida would have been bound thereon, subject to the conditions hereof."

A "mean reserve" was provided for in the contract be-

tween the Inter-Southern Life Insurance Company and Mr. Luning, which was to be calculated by the Florida Life Insurance Company, and the policy holder accepting the reinsurance under the contract, thereby assigned to the Inter-Southern all his equity or right of participation in the assets in the Florida Life Insurance Company should any accrue. If there were no assets forthcoming from the Florida Life Insurance Company the policy holder was to pay the whole of the "mean reserve" as calculated by the Florida Life Insurance Company, and should there be any assets divided among the policy holders the portion allotted to each was to be deducted from the amount of the "mean reserve" due from the policy holder, who should be liable to pay only the difference between such amount and the amount stipulated in the agreement. If the amount allotted to a policy holder on the winding up of the affairs of the Florida Life Insurance Company at the end of five years, should exceed the amount of the "mean reserve" stated in the policy, the difference was to be refunded to the policy holder. The affairs of the Florida Life Insurance Company were to be wound up within five years.

One of the obligations which the Inter-Southern took upon itself in its contract with Mr. Luning was: "And the Inter-Southern further agrees that it will pay in full out of its own assets, without deducting on account of the lien herein provided, the proceeds of each policy which shall become a claim by death within five years from the reinsurance date."

In its agreement with Hyatt the Inter-Southern obligated itself as follows:

"INTER-SOUTHERN LIFE INSURANCE COMPANY does now and hereby assume the within policy

of Insurance Numbered 3756 on the life of Clinton Lee
Hyatt of Kissimmee, Florida, dated on the 21st day of
January, 1910, and is now and hereby bound by all of the
terms and conditions thereof as fully and to the same ex-
tent as said Florida Life Insurance Company is bound by
reason of said policy for the full period of five years from
and after the 29th day of September, 1915, at midnight;
and *after five years,* as above, *to carry said policy with a
lien or loan upon it for the sum of* $266.54, as provided
in said agreement."

It appears from these clauses of the agreements, that
the lien for the mean reserve was not to attach until the
expiration of the five-year period in which the affairs of
the Florida Life Company were being wound up.

The Inter-Southern assumed liability under the poli-
cies of the Florida Life Insurance Company, with the au-
tomatically non-forfeitable clause, whereby it was bound
to continue the policy in force as long as there was a cash
value sufficient to pay premiums. Mr. Hyatt, in accept-
ing reinsurance in the Inter-Southern Life Insurance
Company, consented to all terms and conditions of the
agreement between the Inter-Southern Life Insurance
Company and Mr. Luning, which agreement carried with
it an obligation to pay, with certain exceptions, the
amount of the mean reserve, which was fixed at $266.54.
One of these exceptions was, that if any policy became a
claim by death within five years from the reinsurance
date, which in the case of the policy held by Mr. Hyatt
was September 29, 1915, the Inter-Southern Life Insur-
ance Company agreed to pay "in full out of its own as-
sets, without deduction on the lien," for the mean reserve.

The construction contended for by the defendant in er-
ror would make the obligation to pay the mean reserve,

attach at the instant the policy holder accepted reinsur-
ance in the Inter-Southern Life Insurance Company.
This construction destroys the automatically non-forfeit-
able clause of the policy, because it would in some in-
stances extinguish all cash or loan value, and in others,
as in the instant case, so much of it as to make it insuf-
ficient to continue the policy for such a period as the cash
or loan value at the date of the agreement, would other-
wise have been sufficient to pay the premiums for.

That the Inter-Southern Insurance Company did not
place this construction upon the contract is apparent.
On two several occasions it loaned Hyatt $67.90 to pay
premiums which it could not have done if the amount of
the mean reserve had been charged as a loan against the
cash value of the policy, as there would not then have
been enough of the cash value remaining from which to
make the loan. In making these loans to Hyatt and ac-
cepting his notes for $67.90 and $135.80, the company
placed upon the provisions of the agreement under con-
sideration, its construction that the lien or loan for the
amount of the mean reserve had not then attached and
was not to attach until "after five years."

It was not charged off against the cash or loan value
at the time Hyatt accepted the reinsurance agreement;
it had not been charged off on January 21, 1916, or on
January 21, 1917. At what period then was it to be
paid? We cannot construe these agreements as meaning
anything, but, that in the event that Hyatt's proportion
of the assets of the Florida Life Insurance Company as-
signed by him to the Inter-Southern, were not sufficient
at the expiration of five years to extinguish the company's
claim, it was then to become a lien or loan upon the pol-
icy.

The language used by the company in its agreement with Hyatt makes this conclusion inevitable. If the policy was to be carried from the date of the reinsurance agreement, September 29, 1915, with "a lien or loan upon it for the sum of $266.54," then the words "after five years" are meaningless. There is no escape from the conclusion that the company's agreement to carry the policy with a lien or loan on it for $266.54, "after five years," meant that until the expiration of five years, the policy was to be carried *without* the lien or loan of the $266.54. In other words, *after* five years it was to be carried with a lien or loan on it, but it was not to be so carried *before* five years.

The Inter-Southern in its agreement with Mr. Luning agreed to pay "in full out of its own assets, *without deducting on account of the lien*" for the mean reserve, every policy that became a claim by death within five years of the reinsurance date." How could the Inter-Southern have carried out this agreement to pay the policy in full "without deducting on account of the lien," if on September 20, 1915, the lien had already attached and been charged as a loan on the policy?

The effect of the contention of defendant in error is that the Inter-Southern in its agreement with Mr. Luning,, "we will pay the policy in full without deducting the mean reserve if the policy holder dies within five years," and then by a system of bookkeeping, said "we will not pay the policy in full, because we intended to deduct from its value the amount of the mean reserve." If there could be any doubt about what was meant by the agreement between the Inter-Southern and Mr. Luning, it is removed by the subsequent agreement between the Inter-Southern and Clinton Lee Hyatt made in accord-

ance with the Luning contract, whereby the Inter-Southern agreed *"after five years* to carry said policy with a lien or loan upon it for the sum of $266.54." The five-year period had not expired at the time of Hyatt's death There was sufficient cash or loan value on his policy to carry it under the automatically non-forfeitable clause of the policy, for a period beyond the date of his death. The period at which the parties agreed that the mean reserve should become a lien or loan upon the policy—five years—had not expired and the policy was, therefore, in force at the time of Hyatt's death.   To construe the contracts so as to make the lien of the mean reserve attach before five years, and, therefore, extinguish the cash value, we would have to ignore the words "after five  years." Where a definite time is fixed for doing a thing, it precludes the idea that it is to be done before the expiration of that time.

The agreement, "after five years" "to carry the said policy with a lien or loan upon it" for the mean reserve, is as emphatic as language can make it, that the policy was to be carried for a period of five years *without* the mean reserve being a lien or loan upon it.   That being so, the cash value of the policy was sufficient under the automatically non-forfeitable clause to keep it in force beyond the time of Hyatt's death.

The defendant in error asks this question: "Suppose Hyatt, on the day his premium fell due, instead of coming to the company and asking for a loan of $406.00, or a less amount, on his policy, had asked that $67.90 of that amount be applied to the payment of the premium due by him to the company on that date, which request, so far as the company is concerned, would have amounted to exactly the same thing as if he had asked for the money

as a loan, with the expectation of putting it in his pocket and carrying it away." This, he says, the company would have refused, "because there was a lien or charge against his policy of the amounts mentioned, to-wit: $266.54 and interest, and $135.80, with interest, which, including the interest, equalled more than the loan value."

There is internal evidence in the reason given by counsel, upon which he bases his conclusion, that leads to an entirely different one from that reached by him. The lien for $135.80 referred to in the answer, accrued by transactions identical with the supposititious situation of counsel's illustration. If the answer to counsel's question is helpful in reaching a right conclusion, we can find it in what transpired between Hyatt and the company on the two other occasions when Hyatt applied for loans to pay his premium.

On January 21, 1916, the cash value of Hyatt's policy was $222.00. If the lien for the mean reserve was to be carried as a loan before the expiration of five years, then it became a lien on the 29th of September, 1915, and if the mean reserve had been deducted on that date it would have entirely extinguished the cash value of the policy. In that situation, Hyatt applied to the company for a loan of $67.90 with which to pay the 1916 premium, and the company made the loan, and took his note for the amount. On January 21, 1917, this note became due and was unpaid, and Hyatt, needing $67.90 more to pay the premium for the year 1917, again applied to, and received from the company another loan of $67.90, making his indebtedness to the company $135.80. On the day when the second loan was made, Hyatt's policy had a cash value of $342.00. Had the amount of the mean reserve been deducted from the cash value of the policy prior to Jan-

uary 21, 1917, the company could not have made him this loan because the cash value of his policy would have been only $75.46. So it is clear that from September 29, 1915, until January 21, 1917, the Inter-Southern Company had not charged off the $266.54 as a lien or loan on the policy, else it could not have loaned him the money on those occasions to pay premiums on his policy.

If the Inter-Southern had charged the mean reserve against the cash value of the policy on September 29, 1915, when it entered into the reinsurance agreement with Hyatt and had declined to lend him the money to pay the premium in 1916 and 1917, because the mean reserve had so reduced the cash value of the policy as not to leave enough to enable the Inter-Southern to make the loans, there might be some reason for the present contention of the Inter-Southern, although it would not have affected the proper construction of the contract. But when it made these loans, on January 21, 1916, and on January 21, 1917, it is evident that it placed the same construction on the agreement as that contended for by plaintiff in error—that it was not to be carried as a lien or loan until "after five years." And we so find.

The demurrer to the amended pleas should, therefore, have been sustained.

The Judgment is reversed.

TAYLOR AND ELLIS, J. J., concur.

WEST, J., concurs in conclusion.

WHITFIELD, J., dissents.